106 July 1, 2026 No. 598

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Sergey Nikolayevich SERGEYEV,
*Plaintiff-Respondent,*

*v.*

Svitlana VASYLENKO,
*Defendant-Appellant.*

Washington County Circuit Court
23CN01996; A184056

D. Charles Bailey, Jr., Judge.

Argued and submitted November 17, 2025.

George W. Kelly argued the cause and filed the briefs for appellant.

Daniel S. Margolin argued the cause for respondent. On the brief was Xian-Ling Woram and Margolin Family Law.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Contempt judgment vacated and remanded; supplemental judgment vacated and remanded.

**HELLMAN, J.**

Mother appeals from a contempt judgment and a supplemental judgment awarding father attorney fees. The contempt judgment found mother in willful violation of a nondisparagement clause in the parties' parenting plan based on violations that occurred both before and after the plan was formally memorialized in a general judgment.

On appeal, mother raises six assignments of error. First, she argues that the trial court erred in ruling that the parties' in-court agreement as to the parenting plan provided a legally viable basis for holding mother in contempt for her conduct occurring before the entry of judgment. Relatedly, her second and third assignments challenge the court's imposition of contempt sanctions based on specific instances of her prejudgment conduct. In her fourth and fifth assignments, mother argues that the court erred in holding her in contempt for her post-judgment actions because they did not constitute violations of the nondisparagement clause. Finally, her sixth assignment of error requests the reversal of the court's award of attorney fees.

Because a court may not hold a party in contempt based on violations of a private settlement agreement before it has been adopted in a court order or judgment, we agree with mother's arguments that the trial court erroneously held mother in contempt for her prejudgment conduct. However, we conclude that the court did not err in ruling that mother was in contempt for her post-judgment conduct, because her actions clearly violated the nondisparagement clause contained in the general judgment.

Because we conclude that some, but not all, of the bases for the court's contempt judgment are improper, we vacate that judgment and remand for the trial court to enter a judgment consistent with this opinion. On remand, the court must consider whether the imposed remedial sanctions remain appropriate given that mother can be held in contempt only for her post-judgment conduct. We also vacate and remand the supplemental judgment awarding attorney fees.

## I.   FACTS

Although proof of contempt must be supported by clear and convincing evidence, on appeal, we "do not reweigh the evidence to determine anew whether there is clear and convincing evidence of contempt." *Keller and Holdner*, 232 Or App 341, 343-44, 222 P3d 1111 (2009). Rather, "[w]e review a contempt judgment for any evidence to support the trial court's findings and, if such evidence exists, we determine whether the court's findings support the conclusion that a party is in contempt." *Lopez v. Oregon State Hospital*, 342 Or App 190, 194-95, 575 P3d 1061 (2025).

We recite the relevant facts with that standard in mind. Father and mother are parents of O, who was born in November 2020. At a hearing held in October 2022, parents agreed to a custody and parenting plan, and they placed their settlement agreement as to that plan on the record. In January 2023, the trial court entered a general judgment that incorporated the parenting plan "with a few exceptions" (January 2023 judgment). The plan includes a nondisparagement clause that prohibits each parent, and their family and friends, from "making derogatory comments about the other parent * * * in the presence of the child, or in any way diminishing the love, respect, and affection that the child has for the other parent."

Between the time that parents placed their settlement agreement on the record and the trial court entered the January 2023 judgment that affirmed the stipulated-to parenting plan, mother pulled O's hand down when O was attempting to wave goodbye to father after a visit and, at a separate exchange, allowed her older son to speak poorly of father in front of O. She also communicated to medical providers, in O's presence, concerns that father was improperly sedating O. After entry of the January 2023 judgment, mother continued to communicate those worries about father's treatment of O to doctors. In addition, when father belatedly handed O off to mother during an exchange, mother repeatedly yelled at father, "may you be damned," in front of O.

Father filed a motion for an order compelling mother to show cause why she should not be held in contempt for

the above incidents and why remedial sanctions should not be imposed against her. Father alleged that both mother's prejudgment and post-judgment conduct was contemptible because it violated the terms of the parenting plan, specifically the nondisparagement clause. He also requested attorney fees.

The trial court held a hearing, at which both mother and father testified as to the above events. The court found that mother's testimony was not credible.

The trial court entered a judgment of contempt against mother. The court ruled that it could "find a person in contempt prior to the entry of judgment" for violating their good-faith duty to "follow the terms of a settlement placed on the record." It also made a number of factual findings as to mother's conduct and found, by clear and convincing evidence, that mother willfully violated the terms of the parenting plan in engaging in the above behaviors. The court therefore held mother in contempt of court based on both her prejudgment and post-judgment conduct. It imposed a number of remedial sanctions on mother, including restrictions on the channels of communications permitted between parents and on who can be present during exchanges of O between parents. The court awarded attorney fees to father in a supplemental judgment.

Mother appeals from the contempt judgment and supplemental judgment.

## II.   ANALYSIS

A.   *The trial court erred in ruling that it could hold mother in contempt absent a court order or judgment.*

In her first assignment, mother argues that the trial court erred in ruling that it could hold mother in contempt for violations of the parties' in-court settlement before that settlement became subject to a court order or judgment. We review the trial court's determination as to the extent of its contempt authority for legal error. *See Air Rescue Systems Corp. v. Lewis*, 292 Or App 294, 297-99, 423 P3d 775 (2018) (reviewing, for legal error, a court's authority to impose contempt sanctions absent a court order).

At the hearing, the court ruled that it can "find a person in contempt when there's not an actual judgment/order in place, but the parties have placed a settlement on the record, because the parties have a good-faith duty to follow that settlement." It therefore included, in the contempt judgment, its ruling that it can "find a person in contempt prior to the entry of judgment when they violate the good-faith duty."

The parties agree that the court relied on ORS 33.015(2)(b) to hold mother in contempt. That statutory provision defines contempt to include the willful "[d]isobedience of, resistance to or obstruction of the court's authority, process, *orders or judgments*."[1] (Emphasis added.)

The trial court erred in ruling that it could hold mother in contempt based on the terms of the settlement agreement, absent "an actual judgment/order in place." That ruling directly contradicts *Air Rescue Systems Corp.*, a case in which we held that a trial court could not find a party in contempt under ORS 33.015(2)(b) when an oral settlement agreement, which was previously read into the record, had not yet become subject to a court order. 292 Or App at 297-99. We reasoned that a private settlement agreement between parties and a court order requiring parties to comply with that agreement are "fundamentally different," and that the former does not by itself constitute a court "order" or "judgment" within the meaning of ORS 33.015(2)(b) upon which a party can be held in contempt. *Id.* at 298-99. Thus, because the trial court in that case had not entered an order or judgment that incorporated the oral settlement agreement's terms, we concluded that it lacked authority to hold a party in contempt for violations of that agreement. *Id.* at 295, 299.

This case is controlled by *Air Rescue Systems Corp.* Like in that case, the trial court here asserted its authority

---

[1] Because neither party developed arguments as to whether mother's pre-judgment violations of the settlement agreement constituted disobedience of either the court's "authority" or "process" under ORS 33.015(2)(b), we focus our analysis only on whether a court order or judgment provided a lawful basis for the court's contempt judgment in this case. *See also Air Rescue Systems Corp.*, 292 Or App at 298 n 4 ("[W]e are unpersuaded that reading the terms of a settlement agreement into the record causes a subsequent breach of that agreement to become an act of disobedience of the court's 'authority' or 'process.'").

to hold mother in contempt based on the terms of a private settlement agreement that had been placed on the record but had not yet become subject to a court order or judgment. The parties do not dispute that they placed their settlement agreement on the record in October 2022.[2] However, there is no evidence that the stipulated-to parenting plan became subject to a court order or judgment until the trial court's entry of the January 2023 judgment. Therefore, we conclude that the parenting plan did not become subject to a court order or judgment within the meaning of ORS 33.015(2)(b) until January 2023. It follows that the trial court could hold mother in contempt for violations of the parenting plan that occurred only after that judgment's entry, and it erred in ruling otherwise. Irrespective of any good-faith duty that could be implied into the parties' settlement agreement, absent a court order or judgment, their agreement could not alone provide the basis for finding mother in contempt.[3]

We briefly address our earlier decision, *Paradis and Keith*, 147 Or App 144, 935 P2d 436 (1997), which father argues establishes that a trial court may find a party in contempt for violations of an oral court order that is subsequently reduced to a written order. Even if an oral court order suffices for contempt purposes, the problem with father's argument is that the record here does not establish that *any* court order, oral or written, existed prior to the entry of the January 2023 judgment upon which the trial court could have based its prejudgment contempt findings. *See Air Rescue Systems Corp.*, 292 Or App at 298 (observing that plaintiffs "may be correct that a court order need not be

---

[2] However, we note that the record does not include the transcript of the hearing at which the parties placed their settlement agreement on the record.

[3] We reject father's attempt to distinguish *Air Rescue Systems Corp.* based on the fact that, in that case, the parties' oral settlement did not ever become subject to a court order or judgment. We understand father to argue that, so long as a court order or judgment incorporates the oral agreement by the time of the contempt hearing, a party may be held in contempt for even their preorder or prejudgment conduct. But that position is inconsistent with *Air Rescue Systems Corp.*, which stands for the proposition that a court's authority to hold a party in contempt for a violation of a settlement agreement *attaches at the point that the court subjects that agreement to a court order or judgment*. 292 Or App at 298-99. Therefore, a court may not find preorder or prejudgment conduct to be contemptible, irrespective of whether the court later adopted the agreement in an order or judgment prior to the contempt hearing.

in writing to support a contempt sanction"). Thus, assuming *arguendo* that father's interpretation of *Paradis* is correct, it does not aid him here; that case does not authorize a court to hold a party in contempt for preorder conduct.[4]

In sum, the trial court erred in ruling it could find mother in contempt for violations of the parenting plan that occurred prior to entry of the January 2023 judgment.

B. *The trial court erred in holding mother in contempt for her prejudgment conduct.*

Our conclusion as to the first assignment requires us to also resolve mother's second and third assignments in her favor, because those assignments challenge the trial court's holding of mother in contempt for her conduct that occurred prior to the entry of the January 2023 judgment. Because the trial court lacked the legal authority to hold mother in contempt for her prejudgment conduct, including that related to her preventing O from waving goodbye to father and her older son's statements, the court erred in doing so.

C. *The trial court did not err in holding mother in contempt for her post-judgment conduct.*

We reach a different conclusion as to mother's fourth and fifth assignments, which contest the trial court's holding of mother in contempt for her post-judgment conduct; specifically, mother's disclosures of unfounded abuse allegations against father to several medical providers and her repeated exclamations of "may you be damned" toward father, both of which occurred in O's presence.

To establish contempt of court based on ORS 33.015(2)(b), father needed to establish (1) the existence of a facially valid court order or judgment, (2) the contemnor's knowledge about the court order or judgment, and (3) the contemnor's voluntary failure to comply with the court order or judgment. *Id.*; *see also White v. Reyes*, 335 Or App 124,

---

[4] Although it does not bear on our analysis, we question whether *Paradis* stands for the proposition asserted by father. In our view, *Paradis* is ambiguous as to whether the trial court issued an oral order prior to its written order. 147 Or App at 146. That case can also be read as holding a party in contempt for their conduct that occurred only after entry of a written order. *Id.* at 146-47.

132, 558 P3d 43 (2024), *rev den*, 373 Or 284 (2025) (explaining that a violation is willful when made "intentionally and with knowledge that the act *** was forbidden conduct" or when made knowing about the order but in a "state of elective ignorance" about its requirements). Further, the court order or judgment must be "certain and definite in its terms" to sustain a contempt judgment. *Air Rescue Systems Corp.*, 292 Or App at 299; *see also Macleay Estate Co. v. Bailey*, 132 Or 350, 356, 285 P 809 (1930) (explaining that, to establish contempt, "the act complained of must be so clearly defined in the order that it will appear with reasonable certainty that the order has been violated").

We have already established that there was a valid court judgment, entered in January 2023, that ordered parents to abide by the parenting plan. And mother does not dispute that she knew of that judgment and its terms, including the nondisparagement clause.[5] In addition, she does not dispute that, after entry of the January 2023 judgment, she expressed concern over father's alleged sedation of O to multiple doctors and that she yelled "may you be damned" at father in front of O. Rather, mother argues on appeal that she cannot be held in contempt for those actions because they did not clearly violate the nondisparagement clause. Again, that clause requires that each parent "be restrained and enjoined from making derogatory comments about the other parent *** in the presence of the child or in any way diminishing the love, respect, and affection that the child has for the other parent."[6]

---

[5] Indeed, the record indicates that she helped draft the nondisparagement clause.

[6] In full, the nondisparagement clause states:

"Each parent, and their family and friends, shall be restrained and enjoined from making derogatory comments about the other parent (and their family) in the presence of the child, or in any way diminishing the love, respect, and affection that the child has for the other parent. Further, neither parent shall make any such comments about the other parent on any public or semi-public social media page, app, etc."

The parties also dispute whether mother's conduct violated a separate provision of the parenting plan, which reads, "Each parent shall make every effort to foster affection and respect between the child and the other parent." However, because we determine that both forms of mother's post-judgment conduct violated the nondisparagement clause, we need not evaluate her conduct against the rubric of that other provision.

For the reasons stated below, we conclude that the trial court's factual findings as to mother's post-judgment actions are supported by the record and that those actions violated the clear terms of the nondisparagement clause. Therefore, the trial court did not err in ruling that her communications with doctors and her exclamations of "may you be damned" to father, both in O's presence, could provide bases for its contempt judgment against mother.

1.  *Communications with doctors in O's presence*

We first address whether the trial court erred in holding mother in contempt for "disparag[ing] Father in front of [O] to doctors." Mother raises two independent arguments in contending that those communications were not contemptible.

First, mother argues that because the nondisparagement clause does not clearly prohibit mother from suggesting to doctors that father was improperly sedating O in O's presence, she cannot be held in contempt for those interactions. We disagree. The nondisparagement clause expressly "restrain[s] and enjoin[s]" mother from making "derogatory comments" about father in front of O. *See Webster's Third Int'l Dictionary* 609 (unabridged ed 2002) (defining "derogatory" to include "disparaging * * * : expressive of low estimation or reproach"). That establishes a sufficiently certain and definite restriction on parents' behavior upon which a contempt finding may be based. Further, it was legitimate on this record for the trial court to characterize mother's repeated conveyances of unsubstantiated claims that father was sedating O to doctors as constituting "derogatory comments" that fall under that clear prohibition.[7]

---

[7] That is, the record supports the trial court's findings that mother's communications with doctors amounted to contemptible derogatory comments about father. There is evidence that mother, on multiple occasions, including after entry of the January 2023 judgment, expressed concerns to doctors that father was inappropriately sedating O in O's presence. In addition, the court did not find mother's testimony at the contempt hearing credible, including as to her abuse allegations against father. *Niman and Niman*, 206 Or App 259, 278, 136 P3d 105 (2006) ("We defer to the trial court's * * * credibility findings * * *."). Bringing that together, we conclude that evidence supports the trial court's finding that mother, in relaying unsubstantiated allegations of father's abuse to numerous doctors, "disparaged father in front of [O]." *See Webster's* at 653 (defining "disparage" to include "to lower or degrade * * * : to lower in esteem or reputation : diminish the respect for"). As the court aptly observed, the derogatory nature of

Second, mother argues that O needed to have comprehended what mother was saying to the doctors for those conversations to serve as a basis for contempt and, relatedly, that the trial court's finding that "[O] was able to understand the nature of the communications to the doctors" is unsupported by the record, given O's young age and limited English language skills. We disagree with mother's arguments. The nondisparagement clause sets clear limits on parents' behavior to promote an effective coparenting relationship, to minimize either parent's ability to detrimentally impact O's relationship with the other parent, and to ultimately better protect O's interests. Indeed, in the January 2023 judgment, the trial court expressly stated that the parenting plan "is in the best interests of [O]." *See also* ORS 107.101(5) (stating that a policy of this state is to "[c]onsider the best interests of the child *** in developing a parenting plan"). And by its plain terms, the nondisparagement clause requires that O be present when the derogatory comments are expressed, but it does not require that O understand the contents of those comments. Therefore, the court could hold mother in contempt for her communications with doctors even without evidence of O's comprehension. *See Harris and Harris*, 199 Or App 300, 303, 111 P3d 1140 (2005) (refusing to imply additional terms into a court order in a contempt proceeding).

In short, the trial court did not err in finding mother's statements to doctors constituted a violation of its order because doing so clearly violated the nondisparagement clause contained in the January 2023 judgment.[8]

2. *Exclamations of "may you be damned" to father in O's presence*

Mother also argues that the trial court could not hold her in contempt for her repeated yelling of "may you

---

mother's comments risked "disrupt[ing] the relationship between the Father and [O]" and harming father's "credibility before the doctors." We also note that, at the hearing, even mother acknowledged that "despite the language or age ***, [O] shouldn't be present when I am talking with the doctor about any of my concerns of Father's behavior."

[8] The record indicates that some of mother's problematic communications with doctors occurred prior to the entry of the January 2023 judgment, and some occurred afterwards. We affirm the trial court's contempt finding only to the extent that it implicates mother's post-judgment communications because, as we have already explained, she cannot be held in contempt for her prejudgment conduct.

be damned" toward father in O's presence. For similar reasons as those stated above, we reject her argument that her conduct did not flout the nondisparagement clause. Mother admits that she shouted that phrase toward father in front of O. And evidence in the record supports the court's determination that those statements amounted to a willful violation of the nondisparagement clause. Mother's repeated exclamation of the expletive "may you be damned" can very reasonably be interpreted as a derogatory comment; that action exhibited mother's lack of respect and vitriol for father in O's presence, which threatens to negatively impact O's perception of father in a manner that the nondisparagement clause is intended to guard against.[9]

D.   *Remedy*

We now turn to the question of remedy. Because the trial court found mother in contempt and imposed remedial sanctions based on both her prejudgment and post-judgment conduct, we vacate and remand the contempt judgment for entry of a corrected judgment in light of our determination that mother may not be held in contempt for her conduct occurring prior to the entry of the January 2023 judgment. On remand, the court must consider whether its imposed sanctions are appropriate or whether different sanctions are warranted. *See* ORS 33.105(1) (listing the types of remediable sanctions available).

We therefore also vacate the supplemental judgment awarding attorney fees based on the contempt judgment and remand for reconsideration of that issue, which is the subject of mother's sixth, and final, assignment of error. *See Cirina and Cirina*, 271 Or App 161, 167, 350 P3d 504 (2015) (vacating and remanding award of attorney fees where underlying dissolution judgment vacated and remanded); *Cowles and Flormoe-Cowles*, 322 Or App 741, 745, 522 P3d 557 (2022) (same, but in the contempt context).

Contempt judgment vacated and remanded; supplemental judgment vacated and remanded.

---

[9] The record, which includes a video recording of the incident, indicates that mother not only repeatedly yelled, "may you be damned," toward father while picking up O, but also at least once exclaimed, "wish you were dead." That additional comment provides contextual support for the court's determination that mother's yelling of "may you be damned" was derogatory.